**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JANE DOE,
    Plaintiff,

v.

GENESIS HEALTH SYSTEM,
    Defendant.

Case No. 4:23-cv-04209-JEH

**Order**

    This matter is now before the Court on Defendant's Motion to Dismiss.[1] (D. 22). For the reasons set forth, *infra*, the Defendant's Motion to Dismiss is GRANTED and DENIED in part. The Court dismisses without prejudice counts (I) negligence, (II) negligence *per se*, (V) violation of the Illinois Eavesdropping Statute, (VI) violation of the Electronic Communications Protection Act, and (IX) violation of the Computer Fraud and Abuse Act. The Court dismisses with prejudice counts (IV) bailment, and (VII-VIII) violation of the Electronic Communication Protection Act. Count (III) breach of express contract may proceed. The Plaintiff shall have leave to amend her Complaint within 14 days if she believes she can state a claim in accordance with this Order.

**I**

    On November 21, 2023, Plaintiff, Jane Doe, commenced this action against the Defendant, Genesis Health System ("Genesis"), alleging various wrongful disclosures of Plaintiff's personally identifiable information ("PII") and personal health information ("PHI"). (D. 1). On February 26, 2024, the Defendant filed a Motion to Dismiss the Plaintiff's Complaint. (D. 11). Plaintiff subsequently filed an Amended

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Complaint on March 11, 2024, and the Defendant filed its Motion to Dismiss the Amended Complaint on April 10, 2024. (D. 13 & 15). Plaintiff filed a Memorandum in Opposition to the Defendant's Motion to Dismiss on May 8, 2024, (D. 17), and the Court issued its Order GRANTING and DENYING, in part, Genesis's Motion to Dismiss on August 21, 2024. (D. 19). In its Order, the Court granted Plaintiff leave to replead her Complaint. *Id.* at ECF p. 2. On September 4, 2024, Plaintiff filed a second Amended Complaint and the Defendant filed a Motion to Dismiss the second Amended Complaint on October 18, 2024. (D. 20 & 22). The Plaintiff filed a Memorandum in Opposition to the Defendant's Motion to Dismiss the second Amended Complaint on November 22, 2024. (D. 25). The matter is now fully briefed.

## II

The Plaintiff, Jane Doe, brings this action on behalf of herself, her minor son, and all others similarly situated, in a putative class action against Genesis alleging that the Defendant improperly disclosed the confidential PII and PHI of Plaintiff and potential class members to third parties, including Meta, Google, DoubleClick, TVSquared, Adnxs, Akamai mPulse, Geonetric, and Wistia, as well as potentially others, via tracking technologies that the Defendant is alleged to have embedded on its website. (D. 20 at ECF p. 1-2).[2] According to the Complaint, "Genesis Health System serves a 17-county bi-state region of the Quad Cities . . . and the surrounding communities of Eastern Iowa and Western Illinois." *Id.* at ECF p. 4. Plaintiff states that she has been a patient of Genesis for forty years and that her minor son has been a patient of Genesis since 2007. *Id.* at ECF p. 31. As part of her care, Plaintiff claims she used Defendant's website as late as September of 2023 as part of their "past, present, and future" healthcare and to make payments. *Id.* at ECF p. 32. She states she believed "her online communications with Defendant were confidential." *Id.* Contrary to their status as a "trusted healthcare provider," however, Plaintiff alleges that Genesis

---

[2] While the Plaintiff's Complaint discusses the potential for a class action in her Complaint, the Court has not received a Motion to Certify or ruled on certification and declines to address the issue here.

implemented "code-based tracking devices known as 'trackers' or 'tracking technologies,' which collected and transmitted Plaintiff and Class Members' Private Information to Facebook, Google, and other third parties, without their knowledge or authorization." *Id.* at ECF p. 5. Plaintiff alleges that these trackers are "a snippet of code embedded into a website that tracks information about its visitors and their website interactions." *Id.* at ECF p. 5-6.

For example, the Complaint discusses the "Facebook Pixel" which "tracks information about a website user's device and the URLs and domains they visit," potentially including a "visitor's search terms, button clicks, and form submissions," with the potential for this information to be linked to an individual's Facebook profile. *Id.* at ECF p. 6. Plaintiff claims that, unbeknownst to them, the Defendant embedded Facebook Pixel and other tracking technologies on their website that transmitted Plaintiff's PII and PHI to third parties without her consent. *Id.* at ECF p. 5. The Complaint alleges that the Defendant utilized these trackers to "market their services and bolster their profits" by building data profiles for targeted online advertisements which can be sold to "additional third parties for profit." *Id.* at ECF p. 7-8. As a result of these trackers, the Plaintiff contends that her private information, including "the pages they viewed and the buttons they clicked," "their status as medical patients," "their health conditions," "the medical treatments or therapies they viewed," "their class registrations," "their patient and bill pay portal activities," and the "phrases and search queries" conducted on the Defendant's website, were improperly shared with Facebook and other parties without her consent. *Id.* at ECF p. 8. As a result of these alleged unauthorized disclosures, Plaintiff claims several injuries, including "monetary damage," "loss of privacy," "unauthorized disclosure," "embarrassment," "emotional distress," decreased value of Plaintiff's "private information," lost benefit of the bargain, increased risk of future harm resulting from the disclosure, and targeted online advertisements "based on the information they communicated to Defendant." *Id.* at ECF p. 8, 33-34, 56. To redress her alleged injuries, Plaintiff filed

3

this cause of action alleging various common law, statutory, and contractual causes of action.

Plaintiff's Amended Complaint includes nine counts. Plaintiff claims negligence, negligence *per se*, breach of express contract, bailment, violation of the Illinois Eavesdropping Statute, violation of the Electronic Communications Protections Act ("ECPA") and Stored Communications Act ("SCA") (Counts VI-VIII), and violation of the Computer Fraud and Abuse Act ("CFAA"). (D. 20 at ECF p. 54-78). The Court considers each of Plaintiff's causes of action in turn and whether they can survive the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (D. 22 at ECF p. 1). As this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Court applies Illinois substantive law to causes of action arising under state law. *See Close Armstrong, LLC v. Trunkline Gas Co., LLC*, 434 F.Supp. 3d 658, 667 (N.D. Ind. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

### III

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to a court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing U.S. CONST. ART. III, § 2.)). "Standing is an essential component of the case-or-controversy requirement." *Id.* (citing *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560 (1992)). A Plaintiff must have "standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flynn*, 39 F.4th at 952 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). An "injury in fact" is one that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Silha v. ACT, Inc.*, 807 F.3d

169, 173 (7th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167 (2000)). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Id.* (citing *Lujan*, 504 U.S. at 561)). "In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Id.* (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir 2009)). "A facial challenge argues that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction." *Id.* (citing *Apex Digital Inc.*, 572 F.3d at 443)) (emphasis in original). A Defendant's "Rule 12(b)(1) motion is properly understood as a facial challenge because they contend that Plaintiff['s] complaint lacks sufficient factual allegations to establish standing." *Id.* "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

## A

In the instant case, Genesis's Rule 12(b)(1) Motion is a facial challenge because it asserts the Complaint does not allege factual allegations sufficient to establish standing. (D. 22 at ECF p. 10-11). However, beyond reciting the elements of standing and its assertion that Plaintiff's common law claims "ha[ve] not identified any concrete, particularized harm that is sufficient to confer standing," Genesis does little to develop its argument. *Id.* Genesis does not cite any authority for its proposition before moving on to consideration of Plaintiff's statutory claims. *Id.* Accordingly, the Court declines to engage substantively with the Defendant's argument, but reviews its subject matter jurisdiction nonetheless. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). In its previous Order, the Court dismissed a similar argument made by the Defendant, finding that the Plaintiff's alleged disclosure of her "status as a patient, her physician searches . . . and her identification of health conditions and the treatment sought for those conditions,"

among others, established standing. (D. 19 at ECF p. 20). Here, again, the Court finds the Plaintiff has standing to proceed with her claims. The Plaintiff has pleaded an injury, namely, that her PII and PHI were unlawfully disclosed. Accordingly, the Court must next determine whether that injury is particularized and concrete. *Silha*, 807 F.3d at 173. With respect to particularity, the Plaintiff has pleaded that the disclosure was of *her* information, along with other potential class members, therefore, that element is satisfied. In looking to the concreteness of Plaintiff's claims, central to that analysis "is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms (as relevant here)." *TransUnion LLC*, 594 U.S. at 417 (2021). At common law, American courts have traditionally recognized the disclosure of private information as part of the "umbrella of the tort of invasion of privacy." *Florence v. Order Express, Inc.*, 674 F. Supp. 3d 472, 480 (N.D. Ill. 2023); *see also Smith v. Loyola Univ. Med. Cntr.*, 2024 WL 3338941, *4 (N.D. Ill. 2024) ("The alleged disclosure of the plaintiffs' sensitive health information 'has a close relationship to disclosure of private information, a common-law theory of harm.'"). Therefore, Plaintiff's injury is sufficiently concrete, and her alleged injury is fairly traceable to Genesis, whose alleged conduct caused the disclosure. Accordingly, her claim is likely to be redressed by a favorable judicial decision.

Still, Genesis maintains that Plaintiff's statutory claims lack standing because "she has not alleged any *actual* damages" entitling her to recovery. (D. 22 at ECF p. 11) (emphasis in original). Genesis relies on *FAA v. Cooper*, 566 U.S. 284 (2012), and *Doe v. Chao*, 540 U.S. 614 (2004), for its proposition that standing is only available to Plaintiffs who plead actual damages. However, Genesis's reliance on these cases is misplaced, as they discuss recovery under the Privacy Act, a statute not at issue in this case. To the contrary, Article III standing does not uniformly require that a plaintiff plead or suffer *actual* damage as Genesis asserts. *See Spokeo Inc., v. Robins*, 578 U.S. 330, 331 (2016) (finding even the "violation of a procedural right granted by

statute can be sufficient in some circumstances to constitute injury in fact"); *see also Dieffenbach v. Barnes & Nobles, Inc.*, 877 F.3d 826, 828 (7th Cir. 2018) ("To say that plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available."). Therefore, the Court finds the Plaintiff has established standing and considers Genesis's arguments that Plaintiff's claims should be dismissed for failure to state a claim under Rule 12(b)(6).

## IV

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.*

## A

Plaintiff's claim in Count One alleges the Defendant's negligence. (D. 20 at ECF p. 54-55). She argues that Genesis owed a duty to Plaintiff to exercise reasonable care in handling her PII and PHI, and that Genesis acted with "wanton and reckless disregard for the privacy and confidentiality" of Plaintiff by disclosing that information to third parties without her authorization. *Id.* She alleges that the duty

"arose as a result of industry standards and the physician-patient relationship to keep patient's" PII and PHI confidential and that the duty was breached when that information was shared with third parties, "proximately caus[ing]" her injuries *Id.*

**i**

In Illinois, "To state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of plaintiff's injuries." *Flores v. Aon Corp.*, 242 N.E.3d 340, 353 (Ill. App. Ct. 2023) (citing *Cowper v. Nyberg*, 28 N.E.2d 768, 772 (Ill. 2015)). A duty of care can arise at common law or by statute. *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 812 (Ill. 1996). However, a statute alone cannot create a common law duty. *See Millenium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 16 (Ill. 2010) ("'Common law' is simply the body of law derived from judicial decisions rather than from statutes or constitutions.'")

In this case, Plaintiff maintains that Genesis owed a common law duty to maintain the confidentiality of her information "as a result of industry standards and the physician-patient relationship." (D. 20 at ECF p. 55-56). She alleges that duty was breached by the Defendant when it used tracking technology that disclosed her information to third parties. *Id.* However, her common law claim of negligence can only survive if the common law recognizes such a duty. *Millenium Park Joint Venture*, 948 N.E.2d at 16.

The Illinois Supreme Court has not recognized either of the duties alleged by Plaintiff, while Illinois Appellate Courts have reached differing conclusions. The Plaintiff does not cite to any case law establishing a common law duty requiring confidentiality between a physician and patient. To the contrary, the Illinois Appellate Court has held otherwise. *Geisberg v. Willuhn*, 390 N.E.2d 945, 946 (Ill. App. Ct. 1979) ("Unlike the attorney-client relationship, the common law does not recognize a privilege for communication between a doctor and a patient."). With respect to Plaintiff's claim that there is a general industry duty to safeguard information,

Genesis argues that *Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010), forecloses it. There, the First District's Sixth Division of the Appellate Court of Illinois considered and declined to "recognize a 'new common law duty' to safeguard information." *Cooney*, 943 N.E.2d at 28. Specifically, the Court in *Cooney* held, "While we do not minimize the importance of protecting this information, we do not believe that the creation of a new legal duty beyond legislative requirements already in place is part of our role on appellate review." *Id.* at 29. In response, Plaintiff relies primarily on *Flores v. Aon Corp.*, 242 N.E.3d 340, 354 (Ill. App. Ct. 2023) and its progeny to assert that its claim should survive despite *Cooney's* holding. (D. 25 at ECF p. 12). In *Flores*, the First District's Fifth Division of the Appellate Court of Illinois held that a 2017 legislative amendment to Illinois's Personal Information Protection Act ("PIPA") "has now created a duty to maintain reasonable security measures" because it required "data collectors in possession of the personal information of Illinois residents to 'implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure.'" *Id.* In the context of the data breach at issue in that case, the *Flores* Court concluded that the Defendant—a cybersecurity firm—owed a "common law duty to protect the personal information of its clients . . . ." *Id.* However, this Court declines to follow *Flores.*

The Illinois Supreme Court has said, "Common law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision." *Millennium Park Joint Venture*, 948 N.E. 2d at 16. The Illinois Supreme Court has not recognized a duty to safeguard personal information, and the PIPA does not expressly repeal *Cooney's* holding. *See* Personal Information Protection Act, Ill. Comp. Stat. 815 ILCS 530/1-50. In light of the conflicting holdings of *Flores* and *Cooney* at the Illinois Appellate Court level, that leaves the Court bound to follow controlling decisions by the Seventh Circuit and the Illinois Supreme Court, which have yet to recognize a common law duty to safeguard personal information. In a case post-dating the 2017 amendment to the PIPA, the Seventh Circuit reaffirmed

that "Illinois has not recognized an independent common law duty to safeguard personal information" and also found no reason why "the Illinois Supreme Court would likely disagree with the *Cooney* analysis on this issue of duty under the common law . . . ." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (citing *Cooney,* 943 N.E.2d at 29) (internal citations omitted). Because the Plaintiff asserts a common law claim of negligence arising out of a duty that is not recognized in Illinois, her claim must fail. *See Washington v. City of Chi*, 720 N.E.2d 1030, 1032 (Ill. 1999) ("Unless a duty is owed, there is no negligence, and plaintiffs cannot recover as a matter of law.") (internal citations omitted). Therefore, Plaintiff's common law negligence action is dismissed without prejudice for failing to state a claim.

**ii**

In Count Two, Plaintiff alleges negligence *per se.* (D. 20 at ECF p. 57). In Illinois, "A violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence." *Flores*, 242 N.E.3d at 354 (citing *Kalata v. Anheuser-Busch Cos.*, 581 N.E.2d 656, 661 (Ill. 1991)). However, such a violation only constitutes negligence *per se* "if the legislature clearly intends for the act to impose strict liability." *Id.* (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)). "A party injured by such a violation may only recover by showing that 'the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered.'" *Id.* (citing *Kalata*, 581 N.E.2d at 661). In pleading her claim, Plaintiff "re-alleges and incorporates by reference all other paragraphs in the Complaint" and then asserts that the Defendant violated the following statutes or regulations:

> Pursuant to the laws set forth herein, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health

> Information"), and Security Rule ("Security Standards for
> the Protection of Electronic Protected Health
> Information"), 45 C.F.R. Part 160 and Part 164, Subparts A
> and C and the other sections identified above, and Illinois
> law, including the Illinois Medical Patient Rights Act
> ("MPRA"), 410 Ill. Comp. Stat. 50/3(d), and the Illinois
> Personal Information Protection Act ("IPIPA"), 815 Ill.
> Comp. Stat. 530/5, /45, et seq., Defendant was required by
> law and industry standards to maintain adequate and
> reasonable data and cybersecurity measures to maintain
> the security and privacy of Plaintiff's and Class Members'
> Private Information.

(D. 20 at ECF p. 57-58). However, Plaintiff does not provide any allegation as to how the facts alleged in her Complaint qualify as a violation of any of the statutes or regulations she mentions in alleging negligence *per se*. Plaintiff alleges a hodgepodge of broad federal statutes and regulations, along with Illinois state statutes, while neglecting to include specific provisions that were violated or explaining how she falls within the class of persons that these statutes were intended to protect. Without more, the Court is unable to determine the basis for Plaintiff's negligence *per se* claim and will not attempt to surmise how the facts from the entirety of the Complaint should be incorporated to state it. Federal Rule of Civil Procedure 8(a) requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Plaintiff's claim fails to meet this standard, and if the Court cannot determine Plaintiff's basis, neither can the Defendant. It therefore does not comply with Rule 8's notice pleading requirements and must be dismissed with leave to amend.

### B

In Count Three, Plaintiff pleads breach of express contract. (D. 20 at ECF p. 60). Plaintiff states that the express contract was "set forth in written Privacy Policies, including, but not limited to Genesis Health's Notice of Privacy Practices, in which the Defendant promised only to disclose" Plaintiff's PHI "for marketing purposes

with said patients' written authorization." *Id.* at ECF p. 61.[3] "To state a claim for breach of contract in Illinois, a plaintiff must plead: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Hernadez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186)).

Here, the Plaintiff asserts that she entered into an express contract with the Defendant by virtue of the Privacy Notice and that she fully performed her obligations, satisfying the first two elements. (D. 20 at ECF p. 61). With respect to the third and fourth elements, Plaintiff claims that the Defendant breached the express contract by disclosing her private information to third parties and that as a result she suffered "monetary damages; loss of privacy, unauthorized disclosure of Private Information; unauthorized access to Private Information by third parties; use of the Private Information for advertising purposes; embarrassment; humiliation; frustration; and emotional distress; decreased value of Private Information; lost benefit of the bargain; and increased risk of future harm resulting from further unauthorized use and disclosure" of her information. *Id.* at ECF p. 61-62.

In response, Genesis argues that its Privacy Notice does not constitute an express contract "as recognized by a number of courts across the country" and cites to various decisions outside of the Seventh Circuit and Illinois. (D. 22 at ECF p. 14). However, in the absence of any citation to controlling authority from the Defendant, the Court cannot conclude at this stage that as a matter of law the Privacy Notice did not constitute an express contract.

In an attempt to overcome this lack of binding precedent, Genesis also contends that because the Plaintiff has not alleged "any completed direct financial loss," she has "failed to sufficiently allege any cognizable damages." Genesis relies on *Wittmeyer*

---

[3] Plaintiff asserts other express contracts may have been breached, "including but not limited to Genesis Health's Notice of Privacy Practices" ("Privacy Notice"). However, because the Plaintiff does not plead any additional express contracts, the Court will not entertain others.

*v. Heartland All. for Hum. Needs & Rts.*, 2024 WL 182211, * 6 (N.D. Ill. 2024) (citing *Flores*, 242 N.E.2d at 356), which dismissed the plaintiff's implied contract claim on the basis that it did not constitute an injury-in-fact because "Illinois has 'decline[d] to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages.'" Distinguishably, here, the Plaintiff does allege that the Defendant's violation of an express contract caused "monetary damages." (D. 20 at ECF p. 61). Indeed, "money out of pocket is a standard understanding of actual damages in contract law. . .." *Dieffenbach*, 887 F.3d at 830. In *Dieffenbach*, the Court observed, "To get damages plaintiffs must *show* . . . a culpable data breach . . , but the complaint cannot be dismissed before giving the class an opportunity to do so." *Id.* (emphasis added). Similarly, at this stage, Plaintiffs must be given an opportunity to prove their damages, and the Court need not decide at this juncture whether some, all, or any of her claims may be ultimately recoverable. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 832 (Ill. 2005) (observing the "claimant must establish an actual loss *or measurable damages* resulting from the breach in order to recover") (emphasis added). As a result, Plaintiff's breach of express contract claim is not subject to dismissal.

## C

In Count Four, Plaintiff alleges bailment. (D. 20 at ECF p. 62). "In order to recover under a bailment theory, the plaintiff must allege: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Amer. Amb. Cas. Co. v. Jackson*, 692 N.E.2d 717, 721 (Ill. App. Ct. 1998) (citing *Amer. Amb. Cas. Co. v. City of Chi.*, 563 N.E.2d 882, 884 (Ill. App. Ct. 1990)). "Among the necessary elements of a bailment are an agreement by the bailor to transfer or deliver and the bailee to accept exclusive possession of goods for a specified purpose, the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, and acceptance of

exclusive possession by the bailee." *In re Mondelez Data Breach Litigation*, 2024 WL 2817489, *9 (N.D. Ill. 2024) (citing *Kirby v. Chi. City Bank & Tr. Co.*, 403 N.E.2d 720, 723 (Ill. App. Ct. 1980)). "Where a bailment for the mutual benefit of the parties is alleged, the plaintiff is required to allege the existence of consideration." *Kirby*, 403 N.E.2d at 723.

The Plaintiff pleads that the parties contemplated a mutual benefit bailment via an express contract and that the "Private Information was to be accounted for when the special purpose was accomplished." (D. 20 at ECF p. 62-63). In response, Genesis argues that no bailment could have existed because it did not and cannot have *exclusive possession* of Plaintiff's personal information" and that at no time did Genesis "enter into any type of agreement to take exclusive possession" of her information. (D. 22 at ECF p. 16-17) (emphasis in original). On this point, the Court agrees.

While the Plaintiff has alleged the existence of an express contract, she does not include any supporting facts evidencing an expectation of a return of her PHI or PII, or how the Defendant was to deal with the property in its possession other than that it was to "be accounted for when the special purpose was accomplished." Similarly, Plaintiff has not stated facts sufficient to support her claim that the Defendant ever agreed to take exclusive possession of her information. To the contrary, by Plaintiff's own account, the Defendant explicitly stated that it may disclose her PHI and PII into other third parties' possession. According to her Complaint, the Privacy Notice "states that Genesis may disclose PHI without authorization for treatment purposes, payment, health care operations, and public health activities" and that in "*most* cases, you will be given the opportunity to select whether you do, or do not, want Genesis Health System to use" the PII for "additional purposes." (D. 19 at ECF p. 4) (emphasis added). As a consequence, at this stage, the Plaintiff's claim is not facially plausible because she has not stated enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Accordingly, this Count is dismissed with prejudice for failing to state a claim. *Ashcroft*, 556 U.S. at 663.

D

In Count Five, Plaintiff alleges a violation of the Illinois Eavesdropping Statute ("Eavesdropping Statute"). (D. 20 at ECF p. 64). Specifically, Plaintiff's Complaint cites to "5/14-2(a),-4," which does not exist, and subsequently supplies a recitation of different language from what appears to be another portion of the Eavesdropping Statute that mistakenly cites to the same non-exist portion. (D. 20 at ECF p. 64-68). As a result, the Court is unable to determine exactly what the basis for Plaintiff's claim is. Her Complaint regurgitates and references several different and tangled portions of the Eavesdropping Statute that appear to include § 5/14-2(a)(2),(3), and (5), while neglecting to weave in how the facts she alleges provide support to each claim. Therefore, Count Five of the Complaint fails to lay out in a short and plain statement the facts or portions of the Eavesdropping Statute Plaintiff claims were violated in accordance with Rule 8(a). FED. R. CIV. P. 8(a). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (2007). And because this cause of action presents a more complex allegation, "the required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chi.*, 671 F.3d 611, 617-18 (7th Cir. 2011) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("A more complex case . . . will require more detail both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.")). As a result, this claim is dismissed with leave to amend.

E

In Counts Six through Eight, the Plaintiff alleges the Defendant violated the Electronic Communications Privacy Act ("ECPA") and the Stored Communications Act ("SCA"). (D. 20 at ECF p. 68-77). The ECPA provides civil recovery to any person

15

whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" in violation of the ECPA. 18 U.S.C. § 2520(a). Similarly, the SCA provides a civil remedy for violations of its provisions. 18 U.S.C. § 2707.

i

In Count Six, Plaintiff asserts that her online engagement with the Defendant qualifies as a covered "electronic communication[],"which is defined by the ECPA in relevant part as, "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). By using the "tracking technology on its Website," Plaintiff alleges that the Defendant "intentionally intercepted, endeavored to intercept and procured another person to intercept the electronic communications" of Plaintiff in violation of 18 U.S.C. § 2511(1)(a),(c), and (d). (D. 20 at ECF p. 69-70). Those sections read in relevant part, that the ECPA is violated, "except as otherwise specifically provided in this chapter [by] any person who—"

> intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . ..

or

> intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . ..

or

> intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . .."

18 U.S.C. § 2511(1)(a); 18 U.S.C. § 2511(1)(c); 18 U.S.C. § 2511(1)(d). The ECPA defines an interception as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). It defines an "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . .." 18 U.S.C. § 2510(5).

In its Motion to Dismiss, Genesis asserts that Plaintiff's claim in Count Six fails because it was a party to the electronic communications under § 2511(d) of the ECPA, which reads:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(d). The Court agrees.

While "[f]ew circuits have addressed this exact issue . . . those that have are split on how it should be decided." *See Kurowski v. Rush Sys. for Health,* 659 F.Supp.3d 931, 937 (N.D. Ill. 2023). The Seventh Circuit has not squarely addressed this issue. *See generally United States v. Szymuszkiewics*, 622 F.3d 701, 703 (7th Cir. 2010) (finding a Defendant who placed a '"rule' [on his supervisor's computer] that directed Outlook to forward to [the Defendant] all messages she received" constituted an interception). However, *Szymuszkiewics* considered whether the Defendant's acts constituted an interception, not whether he was a party. *Id.* In this case, the Plaintiff asserts that the "tracking technology deployed *by* Defendant *effectuated* the sending and acquisition of patient communications." (D. 20 at ECF p. 69) (emphasis added). True, all the

electronic communications alleged by the Plaintiff to have been intercepted in violation of the ECPA could not have occurred without the Plaintiff communicating with the other intended recipient, and party, Genesis. Those facts make Genesis—necessarily—a "party to the communication[s]" at issue in this case and under § 2511(d). *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (finding when the Defendant is the intended recipient of the communication, it is necessarily "one of its parties"); *Sloan v. Anker*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) (finding "the communication necessarily requires Defendants' participation, even if Plaintiffs did not intend to share their information with Defendants"); *Kurowski*, 659 F.Supp. at 938 (finding that Rush health system was the intended recipient and a party to the communication in a case that alleged Rush unlawfully disclosed PHI to third parties by using tracking technologies on its web pages).

The Plaintiff attempts to avoid this conclusion by invoking the exception to the exception under § 2511(d), stating "the one-party consent provision is not available if the disclosure itself constitutes a tort or a criminal act" and that the defendant "knowingly" and "intentionally" employed trackers that divulged the contents of her communications. (D. 20 at ECF p. 69-75; D. 25 at ECF p. 22). Her argument invokes § 2511(d)'s language, the exception to the "party" exception, which provides that an individual cannot avail itself of the "party" exception if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(d). Plaintiff asserts that Genesis's "intentional disclosure" was "in violation of HIPAA," and, therefore, constitutes a tortious act in violation of federal law that prevents Genesis from receiving protection under the "party" exception. (D. 25 at ECF p. 22)

However, under § 2511(d), it is not enough that the alleged disclosure may constitute, or result in, a tortious act in violation of federal law. Instead, the language is clear that the interception must be "*for the purpose of committing . . . any tortious act*

. . ..." 18 U.S.C. § 2511(d) (emphasis added). Congress's decision to include that language indicates that the "crime-or-tort" exception requires a specific intent that the Defendant knew its acts were in violation of the HIPAA. By Plaintiff's own account, the "trackers" were "used by the Defendant to benefit Genesis Health and its marketing and advertising purposes," (D. 20 at ECF p. 63), not *for the purpose of* knowingly committing a violation of the HIPAA. *See* 18 U.S.C. § 2511(d); *Desnick v. Am. Broadcasting Cos. Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (Discussing the federal wiretap statute's requirements and finding "the program as it was eventually broadcast" may have been tortious but that "there is no suggestion the defendants sent the testers . . . *for the purpose of* defaming the plaintiffs") (emphasis added). Therefore, Count Six has failed to state a claim upon which relief can be granted and is dismissed with leave to amend.

### ii

In Counts Seven and Eight, the Plaintiff alleges that the Defendant violated the ECPA, 18 U.S.C. § 2511(3)(a), and the SCA, 18 U.S.C. § 2702(a)(1), respectively (D. 20 at ECF p. 71 & 74). Those sections read in relevant part:

> [A] person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

and

> [A] person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.

18 U.S.C. § 2511(3)(a); 18 U.S.C. § 2702(a)(1).

In Count Seven, Plaintiff alleges that the Defendant's website qualified as a covered electronic communication service because it provided the ability to send and receive electronic communications and that the Defendant intentionally divulged Plaintiff's private information to third parties via the tracking technology in violation of 18 U.S.C. § 2511(3)(a). (D. 20 at ECF p. 71-72). Similarly, in Count Eight, the Plaintiff alleges that the Defendant's website qualifies as an electronic communication service and that the Defendant stored the content of Plaintiff's communications and knowingly divulged that information through the tracking technology in violation of 18 U.S.C. § 2702(a)(1). In response, the Defendant asserts that it is not an "electronic communication service," and, therefore, does not fall within the bounds of § 2511(3)(a) or § 2702(a)(1). The Court agrees.

The ECPA defines an electronic communication service as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). This definition applies to both of the Plaintiff's causes of actions under 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702(a)(1). *See* 18 U.S.C. § 2711 (adopting the terms as defined in § 2510). Properly interpreted, § 2510(15) does not transform every business or entity that merely uses an electronic communication service in its business operations into a provider of an electronic communication service.

It is not enough to assert, as the Plaintiff does, that the Defendant is an electronic communication service simply because "in the absence of Defendant's Website, internet users could not send or receive communications regarding" their information. (D. 20 at ECF p. 72). There are many steps involved in an electronic communication that, in their absence, would have prevented the Plaintiff from communicating with the Defendant's website. That alone does not make each one of them an electronic communication service. To hold otherwise would radically transform the breadth of the ECPA and the SCA, and courts have consistently recognized as much. *See Kurowski,* 659 F. Supp. 3d 931, 937 (N.D. Ill. 2023) (finding

that hospital's patient portal "cannot plausibly be considered an electronic communications service provider within the meaning of the Act"); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1004 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518, 523 (N.D. Ill. 2011) ("[C]ourts have consistently acknowledged that internet service providers, e-mail service providers, and telecommunication companies" provide electronic communication services.); *Steinbach v. Vill. of Forest Park*, 2009 WL 2605283, *5 (N.D. Ill. 2009) (finding that Forest Park was not an electronic communication service where it "provided the email address name" because another third party "provided the email service"); *United States v. Weaver*, 636 F. Supp. 2d 769, 770 (C.D. Ill. 2009) (finding Microsoft, an Internet Service Provider, provided electronic communication services); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) ("Although JetBlue operates a website that receives and transmits data . . . it is undisputed that it is not the provider of the electronic communication service that allows such data to be transmitted over the internet."). These cases demonstrate that Genesis is not in the business of providing the public with the "ability" to "send or receive wire communications" under 18 U.S.C. § 2510(15), but, instead, is a business consumer of electronic communication services. Therefore, because the Defendant is not an "electronic communication service" as that term defined in § 2510(15), the Defendant cannot be liable under 18 U.S.C. § 2511(3)(a) or 18 U.S.C. § 2702(a)(1). As a result, Counts Seven and Eight are dismissed with prejudice for failing to state a claim.

F

In its Ninth Count, Plaintiff alleges that Genesis violated the Computer Fraud and Abuse Act ("CFAA"). (D. 20 at ECF p. 77). Plaintiff claims that its devices are "protected computers" under the CFAA because they were "used in or affecting

interstate . . . commerce or communication" under 18 U.S.C. § 1030(e)(2)(B) and that the Defendant "exceeded . . . authorized access" to Plaintiff's protected computers in violation of 18 U.S.C. § 1030(a)(2)(c).[4] *Id.* at ECF p. 77-78. Section 1030(a)(2)(c) is violated by "whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). A civil action under the CFAA can only be sustained in instances where a person "suffers damage or loss by reason of a violation of this section" and the "conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Here, Plaintiff alleges that Genesis's conduct involved one of the factors, namely, that it is a "threat to the public safety" under § 1030(c)(4)(A)(i)(IV), and, therefore, qualifies as an appropriate civil action under 18 U.S.C. § 1030(g). (D. 20 at ECF p. 78).

In response, Genesis asserts in its Motion to Dismiss that Plaintiff's CFAA claim is time-barred under § 1030(g), which limits actions to those "begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. §1030(g); (D. 22 at ECF p. 22). However, Plaintiff's Complaint alleges that it used the Defendant's website and discovered the disclosure of her information in September of 2023. (D. 25 at ECF p. 20). This action was filed in November of 2023 and, therefore, does not fall within the two-year time-bar.

Genesis also asserts that the Plaintiff's CFAA claim fails because she has not alleged facts that the Defendant exceeded its authorized access. (D. 22 at ECF p. 23). On this point, the Court agrees.

The CFAA defines "exceeds authorized access" to mean "access[ing] a computer with authorization and to use such access to obtain or alter information *in the computer* that the accesser is not entitled so to obtain or alter . . . ." 18 U.S.C. §

---

[4] The Plaintiff pleads a violation of "18 U.S.C. § 1030(a)(2),(a)(2)(c)." (D. 20 at ECF p. 78). Section 1030(a)(2) is an umbrella provision that includes "(a)(2)(c)." As the other provisions under the ambit of § 1030(a)(2) deal with financial records of a financial institution and information from a "department or agency of the United States" which are not at issue in this case, the Court construes this claim as alleging a violation of only § 1030(a)(2)(c).

1030(e)(6). In this case, Plaintiff alleges that Genesis tracked and gathered the information that she shared with the Defendant by virtue of using its website and other online services. "When Plaintiff . . . used Defendant's Website and Online Platforms, they thought they were communicating exclusively with their trusted healthcare provider." (D. 20 at ECF p. 5). "Unbeknownst to them, Defendant embedded tracking technologies . . . into *its Website and Online Platforms* . . . ." *Id.* (emphasis added). Plaintiff does not allege facts that support Genesis embedded the tracking technologies onto *her devices* or otherwise obtained or altered information protected *therein*. Instead, the allegations in her Complaint state the trackers were on the Defendant's website and online services, not the other way around.

The Supreme Court reached a similar conclusion in *Van Buren v. United States,* 593 U.S. 374, 378 (2021) (emphasis added), observing, "In the computing context, 'access' references the act of entering a computer '*system itself*' or a particular 'part of a computer system,' such as files, folders, or databases." The Plaintiff has not alleged facts that indicate her computer system—itself—was accessed by the Defendant in an unauthorized or excessive manner. In fact, the privacy policies at issue in this case impugn the exact kind of broad reading of the CFAA that the Supreme Court expressly rejected. "If the 'exceeds authorized access' criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals." *Id.* at 394. Therefore, even accepting Plaintiff's facts as true, she has not stated a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the CFAA claim is dismissed with leave to amend.

## V

For the reasons set forth, *supra*, the Defendant's Motion to Dismiss is GRANTED and DENIED in part. The Court dismisses without prejudice counts (I) negligence, (II) negligence *per se*, (V) violation of the Illinois Eavesdropping Statute, (VI) violation of the Electronic Communications Protection Act, and (IX) violation of

the Computer Fraud and Abuse Act. The Court dismisses with prejudice counts (IV) bailment, and (VII-VIII) violation of the Electronic Communication Protection Act. Count (III) breach of express contract may proceed. The Plaintiff shall have leave to amend her Complaint within 14 days if she believes she can state a claim in accordance with this Order.

*It is so ordered.*

Entered on March 18, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE